U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

FILED

MAY - 9 2007

CLERK, U.S. DISTRICT COURT
By _____
Deputy

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

MULTIMIN USA, INC., ET AL.,          §
                                     §
          Plaintiffs,                §
                                     §
VS.                                  §     NO. 4:06-CV-260-A
                                     §
WALCO INTERNATIONAL, INC.,           §
ET AL.,                              §
                                     §
          Defendants.                §

MEMORANDUM OPINION
and
ORDER

Pending before the court is the motion of defendants, Walco
International, Inc., ("Walco") and Sparhawk Laboratories, Inc.,
(collectively, "defendants")[1] to dismiss the misappropriation of
trade secrets, breach of contract, and breach of fiduciary duty
claims asserted against defendants by plaintiffs, Multimin USA,
Inc. ("Multimin USA") and Warburton Technology, Ltd.
("Warburton"), (collectively "plaintiffs") in this action.
Having reviewed the motion, plaintiffs' response, defendants'

---

[1]The movants, Walco International, Inc., and Sparhawk
Laboratories, Inc., maintain that the remaining parties named as
defendants, Veterinary Laboratories, Inc., and Sparhawk Laboratories,
Inc., and Veterinary Laboratories, Inc., as a Joint Venture, a/k/a
Sparhawk Vet Labs, are not proper defendants.  Mot. at 1, n. 1. The
court does not need to resolve that issue in the course of ruling on
the motion.

reply, and the applicable legal authorities, the court concludes
that such motion should be denied for the reasons stated below.

I.

## Defendant's Motion to Dismiss

The motion to dismiss is directed only to certain claims
asserted by plaintiffs--the "trade-secret misappropriation claim
and related claims[2] that seek to restrain the manufacture and
sale of Defendants' products, MineralMax I and MineralMax II...."
Mot. at 1 (footnote added). "In accordance with the Supremacy
Clause of the United States Constitution, Rules 12(b)(1) and
12(b)(6) of the Federal Rules of Civil Procedure, and the local
rules of this Court, Defendants [move to dismiss those claims] on
grounds that such claims are preempted by the federal patent
laws." Id. at 1.

The court assumes that defendants mean to say that their
motion is urging dismissal of certain claims on the grounds that
the court lacks subject matter jurisdiction over those claims and
that the allegations of plaintiffs' complaint relative to those
claims fail to state a claim upon which relief can be granted.

---

[2]The motion papers indicate that the related claims are the
breach-of-contract and breach-of-fiduciary duty claims.  Mot. at 2.

II.

## Allegations of Complaint

In plaintiffs' current complaint, the first amended complaint filed June 29, 2006, plaintiffs assert against defendants claims (1) of trademark infringement under 15 U.S.C. § 1114(1)(a); (2) of infringement of common-law trademark; (3) of violations of 15 U.S.C. § 1125(a) and (c); (4) of common law misappropriation of trade secrets; (5) of breach of a distribution agreement between Warburton and Walco; and (6) of breach of fiduciary duty by Walco and participation in that breach by other defendants.

In support of those claims plaintiffs allege that:

Warburton is the owner of the formula for a product known as Multimin, which is a liquid solution of trace minerals injected into animals to correct mineral deficiencies.  In March 1999, pursuant to a distribution agreement between Walco and a predecessor of Warburton, Walco became the U.S. distributor of Multimin on behalf of Warburton.  While the distribution agreement was in effect, Warburton provided Walco with various confidential know how and expertise, i.e., trade secrets, concerning Multimin.  On February 28, 2003, the distribution agreement expired.  On October 28, 2003, Warburton's U.S. Patent

3

Application No. 09/939,550 was issued and accorded U.S. Pat. No. 6,638,539 ("'539 Patent").

At some time after the expiration of the distribution agreement, defendants "misappropriated the original trade secret for [M]ultimin by bottling and selling the product called 'Mineral Max™,' which has the same ingredients as Multimin." Pl.'s First Am. Compl. 18 ¶ 50.  In late 2003 or early 2004, Warburton, "as part of its ongoing efforts to improve the formula, changed, improved and newly formulated the [M]ultimin product...."  Pl.'s First Am. Compl. 18 ¶ 51.  This new formula incorporated a new trade secret that included a higher percentage of trace minerals in the formula in a specific ratio and a different way of creating the product.  Plaintiffs have marketed the improved formula as Multimin Cattle and have made efforts to insure that the trade secrets involved in the formula remained a secret.

Beginning on or about February 1, 2006, defendants misappropriated the improved formula used in Multimin Cattle when they bottled and sold Mineral Max II.  According to plaintiffs, Mineral Max II contains essentially the same formula as Multimin Cattle except for the preservative.  Defendants created the formula for Mineral Max II by experimenting with the formula for

4

Multimin in breach of the distribution agreement and the
fiduciary relationship established by such agreement.

III.

Analysis

A.   The Court Has Subject Matter Jurisdiction

Defendants' motion papers leave much to be desired as to the
lack-of-subject-matter-jurisdiction feature of the motion.   So
far as the court can tell, the argument and authorities related
to that feature of the motion are limited to one paragraph on
page 8 of defendants' brief in support of their motion.   On the
assumption that defendants seriously are contesting subject
matter jurisdiction, even though they have failed to give the
court the benefit of their reasoning, the court briefly discusses
that issue, bearing in mind that the court has the duty to
determine on its own motion whether it has jurisdiction of a case
before it.   See Matter of Kutner, 656 F.2d 1107, 1110 (5th Cir.
1981).

The court has subject matter jurisdiction because
plaintiffs' claims "arise under the Constitution, laws, or
treaties of the United States."   See 28 U.S.C. § 1331.
Plaintiffs' allegations of violations of 15 U.S.C. § 1125 and
their trademark infringement claims filed pursuant to 15 U.S.C. §

5

1051, et seq., clearly invoke the court's original jurisdiction under 28 U.S.C. § 1338(a).[3]  Supplemental jurisdiction extends the court's jurisdiction to the state court claims that are sufficiently related to the claim on which the court's original jurisdiction is based.  28 U.S.C. § 1367.  Here, plaintiffs' state law claims are so related to their federal causes of action that the state claims "form part of the same case or controversy."  Id.  Accordingly, the court has supplemental jurisdiction over those state law claims.  Therefore, the court is satisfied that subject matter jurisdiction is proper and that defendants' suggestion that the court lacks jurisdiction should be rejected.

B.   There is No Failure to State a Claim

    1.   Standard:

The standard for deciding a motion to dismiss for failure to state a claim are well settled.  The court's task is to determine "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.`"  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).  A complaint "should not be dismissed for failure to state a claim unless it appears

---

[3] "The district courts shall have original jurisdiction of any civil action arising under an Act of Congress relating to patents, plant variety protection, copyrights and trademarks."  28 U.S.C. § 1338(a).

6

beyond doubt that the plaintiff can prove no set of facts that would entitle him to relief." <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957).  The court construes the allegations of the complaint favorably to the pleader.  <u>Scheuer</u>, 416 U.S. at 236.  However, the court does not accept conclusory allegations or unwarranted deductions of fact as true.  <u>Tuchman v. DSC Communications Corp.</u>, 14 F.3d 1061, 1067 (5th Cir. 1994); <u>Guidry v. Bank of LaPlace</u>, 954 F.2d 278, 281 (5th Cir. 1992).

   2.   <u>Preemption Does Not Apply to the Pleaded Claims</u>:

   The Supremacy Clause of the United States Constitution states that the laws of the United States "shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."  U.S. Const., art. VI, cl. 2. Under the Supremacy Clause, state law that "interferes with or is contrary to federal law, must yield."  <u>Felder v. Casey</u>, 487 U.S. 131, 138 (1988)(internal quotation marks omitted).  Article 1, section 8, clause 8, of the United States Constitution gives Congress the power "[t]o promote the Progress of Science and useful Arts, by securing for limited Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries."  Pursuant to this authority, Congress enacted the

Patent Act, 35 U.S.C. §§ 1-376 (1994).  State law claims "are
preempted if they stand 'as an obstacle to the accomplishment and
execution of the full purposes and objectives of Congress in
enacting" the patent laws.  Dow Chemical Co. v. Exxon Corp., 139
F.3d 1470 (Fed. Cir. 1998) (quoting Hines v. Davidowitz, 312 U.S.
52, 67 (1941)).

In Kewanee Oil Co. v. Bicron Corp., 416 U.S. 470 (1974), the
Supreme Court analyzed the permissible reach of state regulation
of trade secrets by focusing on whether the state statue
"'clashe[d] with the objectives of the federal patent laws.'"
Id. at 480 (quoting Sears, Roebuck & Co. v. Stiffel Co., 376 U.S.
225, 231 (1964)).  The Court outlined the objectives of the
patent laws as follows: (1) to provide an incentive to invent,
(2) to promote the full disclosure of inventions, and (3) to
ensure that "that which is in the public domain cannot be removed
therefrom by action of the States."  Id. at 480-81.  The Court
ultimately held that the state statute there in question
protecting trade secrets did not conflict with the objectives of
the patent laws.  Id. at 491.  Although the statute protected
ideas that were clearly within the subject matter of the patent,
the Court concluded that the level of protection provided by the
statute did not conflict with the policies of encouragement of

patentable invention and prompt disclosure of such inventions.
Id. at 484-91.

The Court considered several factors in arriving at this
conclusion.  First, that the patent law objective of encouraging
invention cannot be strained by a law that also offers an
incentive to invent.  Id. at 484.  Second, that because a trade
secret has, by definition, not been placed in the public domain,
"the policy that matter once in the public domain must remain in
the public domain is not incompatible with the existence of trade
secret protection."  Id.  Third, and central to the Court's
conclusion that trade secret protection did not conflict with
either the encouragement or disclosure policies of the federal
patent law, that "[t]rade secret law provides far weaker
protection in many respects than the patent law."  Id. at 489-90.
Finally, that trade secret protection covered non-economic state
interests outside those addressed by the federal patent laws.
Id. at 487.  "A most fundamental human right, that of privacy, is
threatened when industrial espionage is condoned or is made
profitable; the state interest in denying profit to such illegal
ventures is unchallengeable."  Id. at 487.  The Court concluded
that a state trade secret law protecting that privacy did not

conflict with the policies of the patent system and was not
preempted.  Id. at 492-93.

Since Kewanee, the Supreme Court has affirmed the use of a
practical approach in analyzing whether state law remedies are
preempted by federal patent laws.  See Aronson v. Quick Point
Pencil Co., 440 U.S. 257, 262 (1979)(stating that "[c]ommercial
agreements traditionally are the domain of state law.  State law
is not displaced merely because the contract relates to
intellectual property which may or may not be patentable; the
states are free to regulate the use of such intellectual property
in any manner not inconsistent with federal law").  In 1989, the
Supreme Court held in the case of Bonito Boats, Inc. v. Thunder
Craft Boats, Inc., 489 U.S. 141 (1989), that the state statute at
issue was preempted by federal patent law because the statute
restricted the public's ability to exploit ideas that the patent
system directed should be free for all to use.  Id. at 167.  The
Supreme Court distinguished the finding of preemption in Bonito
from the conclusions in Sears and Kewanee, as those latter cases
involved "state protection [that] was not aimed exclusively at
the promotion of invention itself, and the state restrictions on
the use of unpatented ideas were limited to those necessary to

promote goals outside the contemplation of the federal patent

scheme." Bonito, 489 U.S. at 166.

In 1998, the Federal Circuit decided a case involving issues

of Patent Act preemption of state law claims.  In Dow, the court

held that the state law at issue

> is not preempted by the federal patent law, even if it
> requires the state court to adjudicate a question of
> federal patent law, provided the state law cause of
> action includes additional elements not found in the
> federal patent law cause of action and is not an
> impermissible attempt to offer patent-life protection
> to subject matter addressed by federal law.

139 F.3d at 1473.

Here, defendants contend that federal patent laws preempt

plaintiffs' state law claim for misappropriation of trade

secrets.  Plaintiffs maintain that preemption does not apply.  In

Texas, breach of a confidential relationship is a necessary

element of a claim for misappropriation of a trade secret.  Hyde

Corp. v. Huffines, 314 S.W.2d 763, 769 (Tex. 1958).  In Hyde, the

Texas Supreme Court held that the plaintiffs' trade secrets claim

was not automatically barred by the issuance of a patent that

disclosed those trade secrets to the public.  Id. at 778.  The

Court reasoned that it was defendants' breach of the confidential

relationship that gave rise to plaintiffs' claim for

misappropriation of trade secrets, id. at 772, and found immaterial

11

the fact that the secrets were contained in a patent application because defendants gained knowledge of the trade secrets through the confidential relationship long before the application was made public by the Patent Office, id. at 773.  Essentially, the claim for misappropriation of trade secrets arose the moment defendants breached the confidential relationship, regardless of the subsequent patent application.[4]

In the instant action, plaintiffs claim they were in a confidential relationship with defendants pursuant to the distribution agreement.  According to plaintiffs, defendants breached that confidential relationship by using secrets learned through the distribution agreement to develop a product designed to compete with plaintiffs' product.  Plaintiffs argue that here, as in Hyde, the fact that a patent was later issued involving these secrets is immaterial to their claim for misappropriation.  Where,

---

[4]  The court stated that

> [W]here one has gained knowledge of trade secrets in confidence, he should not be permitted to exploit the economic advantage gained thereby to the detriment of the opposing party simply because of the public disclosure of the claims in the patent application.  One who has obtained prior knowledge of a device in confidence may well establish a manufacturing head start, so to speak.  He may not and often does not stand on the basis of economic equality with competing manufacturers or the public at large at the date of the public disclosure of the claims in the patent application.  For this reason relief by way of injunction should not arbitrarily be denied because the trade secrets contained in an application for a patent have been made public.

Hyde Corp. v. Huffines, 314 S.W.2d 763, 778 (Tex. 1958).

as here, plaintiffs bring a claim for misappropriation of trade secrets based on a defendant's breach of a confidential relationship, the fact that a patent is issued subsequent to such breach is irrelevant in evaluating the misappropriation claim.   In Texas, trade secret laws protect information learned through confidential relationships and provide a remedy when such confidence is breached.  See Hyde, 314 S.W.3d at 773.[5]  Thus, although the claim may involve secrets that are the subject of a patent, the state law is not attempting to provide patent-like protection.   Rather, the state law is protecting the confidential relationship.   Because plaintiffs' state law claim "includes additional elements not found in the federal patent law cause of action and is not an impermissible attempt to offer patent-like protection to subject matter addressed by federal law," Dow, 139 F.3d at 1473, such claim is not preempted by the Patent Act.

Defendants argue that "[t]o the extent [p]laintiffs' breach-of-contract and breach-of-fiduciary duty claims are predicated on the alleged misappropriation by [d]efendants ... those claims are

---

[5] In Hyde, the Texas Supreme Court adopted section 757 of the Restatement (Second) of Torts (1965), which defines the liability for disclosure or use of another's trade secret.  Hyde, 314 S.W.2d at 769  "'One who discloses or uses another's trade secrets, without a privilege to do so, is liable to the other if (a) he discovers the secret by improper means, or (b) his disclosure or use constitutes a breach of confidence reposed in him by the other in disclosing the secret to him.'"  Id. (quoting Restatement (Second) of Torts § 757).

preempted by the Patent Act as well, and should be dismissed for the same reasons as [p]laintiffs trade secret misappropriation claims." Defs.' Br. in Supp. Mot. to Dismiss 18.  Defendants cite no authority to support this assertion.  Just as plaintiffs' misappropriation claims are not preempted by the patent laws, the court concludes that preemption does not apply to plaintiffs' breach of contract and breach of fiduciary duty claims.

IV.

Order

For the reasons discussed above, the court concludes that defendants' motion should be denied.

Therefore,

The court ORDERS that defendants' motion to dismiss certain claims be, and is hereby, denied.

SIGNED May 9____, 2007.

_____
JOHN McBRYDE
United States District Judge