U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED
JUN - 8 2007
CLERK, U.S. DISTRICT COURT
By _____
Deputy

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| MULTIMIN USA, INC., ET AL., § | |
| Plaintiffs, § | |
| VS. § | NO. 4:06-CV-260-A |
| WALCO INTERNATIONAL, INC., § ET AL., § | |
| Defendants. § | |

MEMORANDUM OPINION
and
ORDER

Pending before the court is the motion of defendants, Walco International, Inc. ("Walco"); Sparhawk Laboratories, Inc.; Veterinary Laboratories, Inc.; and Sparhawk Laboratories, Inc. and Veterinary Laboratories, Inc., as a Joint Venture, a/k/a Sparhawk Vet Labs., (collectively, "defendants") to dismiss certain claims of plaintiff Multimin USA, Inc. ("Multimin USA") for lack of standing. Having reviewed the motion, Multimin USA's response, defendants' reply, and the applicable legal authorities, the court concludes that such motion should be granted for the reasons stated below.

I.

Allegations of Complaint

On February 28, 2006, plaintiffs, Multimin USA and Warburton Technology Ltd. ("Warburton"), filed the instant action against defendants claiming trademark infringement under 15 U.S.C. § 1114(1)(a) and (b); violations of the Lanham Act, 15 U.S.C.

§ 1125; infringement of common-law trademark; common law misappropriation of trade secrets; breach of the Distribution Agreement by Walco; breach of fiduciary duty by Walco and participation by other defendants; and, against defendants other than Walco, conspiracy.

In support of those claims plaintiffs allege that: Warburton is the owner of the formulas, trade secrets, and common-law and statutory trademarks for multimin, a liquid solution of trace minerals injected into animals to correct mineral deficiencies. In March of 1999, pursuant to a distribution agreement, Walco became the U.S. distributor of multimin on behalf of Warburton ("Distribution Agreement"). While the Distribution Agreement was in effect, Warburton provided Walco with confidential know-how and expertise, i.e., trade secrets, concerning multimin. In 2003 the Distribution Agreement expired. On February 13, 2003, Warburton appointed Multimin USA the exclusive distributor for multimin in the United States, Canada, and Mexico, and assigned the trademark and marketing rights for multimin in the United States to Multimin USA.

After the expiration of the Distribution Agreement, defendants "misappropriated the original trade secret for multimin by bottling and selling the product called 'Mineral Max™,' which has the same ingredients as Multimin." Pls.' First Am. Compl. 18 ¶ 50. In a letter dated December 11, 2003, an

2

attorney for Warburton sent a letter to counsel for defendants stating that defendants' mineral supplement fell "completely within the scope of Claim 1 of the '539 Patent" and requested that defendants "consider licensing the technology as covered in the '539 [P]atent or withdrawing its mineral supplement from the market." Mot. to Dismiss, App. 40.

In late 2003 or early 2004, Warburton, "as part of its ongoing efforts to improve the formula, changed, improved and newly formulated the multimin product. . . ." Pls.' First Am. Compl. 18 ¶ 51. This new formula incorporated a new trade secret that included a higher percentage of trace minerals in the formula in a specific ratio and a different way of creating the product. Plaintiffs have marketed the improved formula as Multimin Cattle and have made efforts to insure that the trade secrets involved in the formula remained a secret.

On or about February 1, 2006, defendants misappropriated the improved formula used in Multimin Cattle when they bottled and sold Mineral Max II. According to plaintiffs, Mineral Max II contains essentially the same formula as Multimin Cattle except for the preservative. Defendants created the formula for Mineral Max II by experimenting with the formula for multimin in breach of the parties' distribution agreement and the fiduciary relationship established by such agreement.

3

II.

The Motion to Dismiss

On May 2, 2007, defendants filed a motion to dismiss certain claims of Multimin USA for lack of standing, seeking dismissal of the following claims: (1) trademark infringement under 15 U.S.C. § 1114(1)(a) and (b), (2) dilution under the Lanham Act, 15 U.S.C. § 1125(c), (3) common law trademark infringement, (4) misappropriation of trade secrets, (5) breach of contract, and (6) breach of fiduciary duty.[1]  On May 22, 2007, plaintiffs filed a response to the motion.  Following the filing by the parties on May 23, 2007, of an agreed stipulation of dismissal as to certain claims, the court signed an order and final judgment dismissing Multimin USA's claims against defendants for breach of contract, breach of fiduciary duty, and common-law misappropriation of trade secrets.  Accordingly, defendants' reply filed May 30, 2007, clarified that their motion to dismiss now is limited to the assertions that Multimin USA lacks standing to pursue the following remaining claims: (1) trademark infringement under 15 U.S.C. § 1114(1)(a) and (b), (2) dilution under the Lanham Act, 15 U.S.C. § 1125(c), and (3) common law trademark infringement.

---

[1] Defendants do not contend that plaintiff Warburton Technology Ltd., does not have standing to assert the claims at issue.

4

III.

Analysis

A.  Jurisdiction

The court interprets the motion to dismiss to urge that the court lacks jurisdiction over the subject matter because of lack of standing.[2] The district courts of the United States are courts of limited jurisdiction; they possess only the power authorized by the Constitution and statute. Kokkonen v. Guardian Life Ins. Co. of America, 511 U.S. 375, 377 (1994). A cause is presumed to lie outside of this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction. Id. This burden applies to a jurisdictional challenge based on lack of standing as well as other challenges directed to subject matter jurisdiction. Steel Co. v. Citizens for Better Env't, 523 U.S. 83, 103-04 (1998).

When making a ruling on a motion to dismiss for want of jurisdiction, the court is authorized to consider evidence beyond the complaint and to make appropriate factual determinations. Clark v. Tarrant County, Tex., 798 F.2d 736, 741 (5th Cir. 1986); Williamson v. Tucker, 645 F.2d 404, 413 (5th Cir. 1981).

---

[2] "[S]tanding is essential to the exercise of jurisdiction and is a 'threshold question . . . [that] determin[es] the power of the court to entertain the suit.'" Coleman v. Champion Int'l Corp., 992 F.2d 530, 532 (5th Cir. 1993) (quoting Warth v. Seldin, 422 U.S. 490, 498 (1975)). The parties are in agreement that the motion to dismiss is a motion that questions the court's jurisdiction to entertain the claims at issue. Defs.' Br. 3; Multimin USA's Opp'n 5. Both also agree that the standing jurisdictional requirement in this case should be determined before the court entertains the merits of the case. Defs.' Br. 3; Multimin USA's Opp'n 5.

5

B.  <u>Warburton's Trademark</u>

Generally, an owner or registrant of a trademark is the proper plaintiff in an action for trademark infringement. However, trademarks, like other personal property, may be conveyed from the registrant to others. <u>Gaia Technologies v. Reconversion Tech.</u>, 93 F.3d 774, 777 (Fed. Cir. 1996). "Trademark rights can be acquired in two ways: by getting ownership or title to another's trademark rights, or by the proper usage of a trademark associating or identifying the user as the owner of the work or the source of the product." <u>Acme Valve & Fittings Co. v. Wayne</u>, 386 F. Supp. 1162, 1165 (S.D. Tex. 1974). For a transfer of rights in a trademark to constitute an assignment,

> thereby vesting title to the trademark in a party, the transfer must be absolute and must relate to the entire rights in the trademark. In contrast to an assignment, a license to use a mark does not pass title to the trademark because it is a transfer of limited rights, less than the whole interest which might have been transferred.

<u>Id</u>. An owner or registrant who assigns its trademark also assigns the right to sue for infringement of that mark. <u>Gaia Technologies</u>, 93 F.3d at 777. "A registered mark . . . shall be assignable with the good will of the business in which the mark is used, [and such] [a]ssignments shall be by instruments in writing duly executed." 15 U.S.C. § 1060(a).

Multimin USA maintains in the instant action that it was the assignee or, in the alternative, an exclusive licensee of the

trademark at issue pursuant to the "Agreement to Appoint a Distributor" that Multimin USA entered into with Warburton. Pl.'s App. Opp'n Ex. 8. Thus, according to Multimin USA, it has proper standing to sue defendants for trademark infringement and dilution. Defendants do not dispute that an assignee of a trademark also gains the right to litigate such mark; rather, they assert that Warburton never assigned the trademark to Multimin USA. Defendants contend that, at most, the distribution agreement constituted an exclusive license from Warburton to Multimin USA and that such license does not confer standing to sue for infringement or dilution as an owner or registrant.[3]

While parties disagree whether Multimin USA was an assignee or exclusive licensee pursuant to the distribution agreement, both parties cite to the case of ICEE Distributors, Inc. v. J & J Snack Foods Corp., 325 F.3d 586 (5th Cir. 2003), in support of their respective arguments. The Fifth Circuit held in ICEE that plaintiff lacked standing to sue defendants under 15 U.S.C. § 1125(c) because it was not the owner or assignee of the marks, "but merely an exclusive licensee." Id. at 599. The court's opinion in ICEE is instructive:

> A license to use a mark . . . is a transfer of limited rights, less than the whole interest which

---

[3] Defendants concede that Multimin USA has proper standing to sue for a violation of 15 U.S.C. § 1125(a) as that statute confers standing on anyone who "believes that he or she is or is likely to be damaged by" such a violation. See Defs.' Br. 4 (stating that defendants do not challenge Multimin USA's standing to sue under § 1125(a)).

7

might have been transferred. As one court has explained

> One of the ways that the law extends the benefits of trademarks and protects incentives to develop them is by allowing trademark owners to license the use of their marks to distributors and franchisees. Such licensing allows more information to be conveyed to more consumers <u>without the licensor having to risk losing title to its mark</u>.
>
> It would be antithetical to the basic principles of trademark law to extend to a licensee the rights of an assignee without caution, since deeming a licensee an assignee would allow the assignee to hold the registered trademark owner liable under trademark law, rather than simply under contract law, for diluting the mark by utilizing a similar trademark in the assignee's area.
>
> Although a truly exclusive licensee, one who has the right even to exclude his licensor from using the mark might be considered an assignee since no right to use the mark is reserved to the licensor, an agreement that sets forth many duties and rights between the parties that are inconsistent with an assignment, such as geographic limitations on the licensee's territory, does not constitute an assignment.

325 F.3d at 598 (internal citations, quotation marks, and footnotes omitted) (quoting <u>TMT North America, Inc. v. Magic Touch GmbH</u>, 124 F.3d 876, 882 (7th Cir. 1997) (emphasis added)). The Fifth Circuit held that the contract between the plaintiff and the defendants was "an exclusive license arrangement only, with ultimate control and ownership of the trademarks resting with [defendants]." <u>Id</u>. at 599. Accordingly, the court concluded that plaintiff lacked standing to sue defendants for trademark dilution under § 1125(c). <u>Id</u>.

Having reviewed the relevant facts in the instant action and the applicable legal authorities, the court finds no evidence that Warburton assigned its trademark to Multimin USA. Representatives of Warburton, as well as Multimin USA, have stated that Warburton retained ownership of the trademark even after the distribution agreement was entered into. Further, the distribution agreement itself makes clear that Multimin USA was to be the "sole and exclusive distributor" of the multimin product, but never mentions an <u>assignment</u> of any kind. Multimin USA's App. Opp'n 1. Moreover, the agreement explicitly states that Warburton "owns" the trademark in the United States and that "[t]he name 'Multimin' shall at all times throughout the currency of this agreement remain the property of [Warburton] although [Multimin USA] will have full rights of the usage thereto within the Territory for the purposes of this agreement during the currency of this agreement." <u>Id</u>. at 5.

Multimin USA argues alternatively that the distribution agreement constitutes the type of exclusive license that gives Multimin USA the rights of an assignee of Warburton's trademark. While the <u>ICEE</u> court noted that a "truly exclusive licensee" may constitute an assignee, the court also made clear that "an agreement that sets forth many duties and rights between the parties that are inconsistent with an assignment, such as geographic limitations on the licensee's territory, does not

9

constitute an assignment." 325 F.3d at 598. The distribution agreement between Warburton and Multimin USA is the type of licensing agreement that the court in <u>ICEE</u> refused to consider an assignment. Although Multimin USA claims that the distribution agreement gave it exclusive rights, the agreement sets forth several rights to be retained by Warburton that are inconsistent, not only with an assignment, but even with an exclusive license. Consequently, the court finds no evidence that the distribution agreement constituted the type of exclusive license that could be considered an assignment of rights to Warburton's trademark.

C. <u>Standing</u>

1. <u>Multimin USA lacks standing to sue under § 1114(1) or § 1125(c)</u>

Section 1114 states that "[a]ny person who shall, without the consent of the registrant-- [violate subsections (a) or (b) of that section], shall be liable in a civil action <u>by the registrant</u> for the remedies hereinafter provided." (emphasis added). Similarly, the Lanham Act, 15 U.S.C. § 1125(c), states that the "<u>owner</u> of a famous mark shall be entitled . . . to an injunction against another person's commercial use in commerce of a mark . . . if such use begins after the mark has become famous and causes dilution . . . ." (emphasis added). Here, Warburton is the registrant and owner of the trademark at issue; and, as discussed above, there is no evidence that it assigned the mark to Multimin USA. Thus, Multimin USA has not shown that it has

10

standing to sue defendants for trademark infringement under § 1114(1) or for dilution under § 1125(c).

2.  <u>Multimin USA lacks standing to sue under state law</u>

Under Texas state law governing infringement of a registered mark, "a person commits infringement if [he violates subsections (1) or (2)] without the registrant's consent . . . ." Tex. Bus. & Comm. Code § 16.26 (2005). "A common law trademark infringement action under Texas law presents no difference in issues than those under federal trademark infringement actions." <u>Zapata Corp. v. Zapata Trading Intern., Inc.</u>, 841 S.W.2d 45, 47 (Tex. App.--Houston [14th Dist.], 1992 (citing <u>Waples-Platter Companies v. General Foods Corp.</u>, 439 F. Supp. 551, 583 (N.D. Tex. 1977)).

Here, the court has concluded that Multimin USA has not shown that it is an assignee of Warburton's trademark. Thus, Multimin USA has not shown that it has standing to bring an infringement or dilution claim under those sections of the Texas statutes conferring standing on the registrant of the mark. Therefore, Multimin USA's state law claim for infringement must also fail for lack of standing. <u>See</u> Tex. Bus. & Comm. Code § 16.26.

IV.

<u>Order</u>

For the reasons discussed above, the court concludes that defendants' motion to dismiss certain claims of Multimin USA should be granted.

Therefore,

The court ORDERS that Multimin USA's claims against defendants for trademark infringement under 15 U.S.C. § 1114(1)(a) and (b), for dilution under the Lanham Act, 15 U.S.C. § 1125(c), and for infringement of common law trademark be and are hereby, dismissed for lack of standing.

SIGNED June  8  , 2007.

_____
JOHN McBRYDE
United States District Judge