IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

NORTHERN DISTRICT OF TEXAS
FILED

JUN 2 0 2007

CLERK, U.S. DISTRICT COURT
By _____
Deputy

MULTIMIN USA, INC., ET AL.,        §
                                   §
        Plaintiffs,                §
                                   §
VS.                                §    NO. 4:06-CV-260-A
                                   §
WALCO INTERNATIONAL, INC.,         §
ET AL.,                            §
                                   §
        Defendants.                §

MEMORANDUM OPINION
and
ORDER

Before the court for decision are the motion of defendants,
Walco International, Inc., ("Walco") and Sparhawk Laboratories,
Inc., (collectively, "defendants")[1] for summary judgment as to
all claims and causes of action asserted by plaintiffs, Multimin
USA, Inc. ("Multimin USA") and Warburton Technology, Ltd.
("Warburton") (collectively "plaintiffs"), and the motion of
Warburton for summary judgment on its claims for breach of the
distribution agreement, misappropriation of trade secrets, and
breach of fiduciary duty asserted against defendants.  For the
reasons stated below the court is denying Warburton's motion and
granting defendants' motion in part and denying it in part.[2]

_____

[1]The movants, Walco International, Inc., and Sparhawk Laboratories,
Inc., maintain that the remaining parties named as defendants, Veterinary
Laboratories, Inc., and Sparhawk Laboratories, Inc., and Veterinary
Laboratories, Inc., as a Joint Venture, a/k/a Sparhawk Vet Labs, are not
proper defendants.  Defs.' Mot. 1 n.1. The court does not need to resolve that
issue in the course of ruling on the motion.

[2] In deciding the motions for summary judgment the court is taking into
account plaintiffs' objections to defendants' summary judgment evidence
contained in plaintiffs' motion and brief in support filed May 22, 2007, as
well as defendants' objections to plaintiffs' summary judgment evidence
contained in defendants' motion and brief in support filed June 6, 2007.

I.

## Overview

This is an action for trademark infringement and dilution, misappropriation of trade secrets, breach of contract, breach of fiduciary duty, and conspiracy, brought by Warburton, the developer of an injectable nutritional supplement for cattle known as Multimin, a liquid solution of trace mineral injected in animals to correct mineral deficiencies, and by Mutimin USA, Warburton's new U.S. distributor of multimin.  Plaintiffs have sued Walco, which is Warburton's former U.S. distributor of multimin, and Sparhawk, which is the manufacturer of Walco's competing product sold under the MineralMax mark.

II.

## Allegations of Complaint

In plaintiffs' current complaint, the first amended complaint filed June 29, 2006, plaintiffs assert against defendants claims (1) of trademark infringement under 15 U.S.C. § 1114(1)(a); (2) of infringement of common-law trademark; (3) of violations of 15 U.S.C. § 1125(a) and (c); (4) of common law misappropriation of trade secrets; (5) of breach of a distribution agreement between Warburton and Walco; and (6) of breach of fiduciary duty by Walco and participation in that breach by other defendants.[3]

---

[3]Following the filing by the parties on May 23, 2007, of an agreed stipulation of dismissal as to certain claims, the court signed an order and final judgment dismissing Multimin USA's claims against defendants for breach of contract, breach of fiduciary duty, and common-law misappropriation of trade secrets.  In a memorandum opinion and order signed June 8, 2007, the court dismissed Multimin USA's claims of: (1) trademark infringement under 15 U.S.C. § 1114(1)(a) and (b), (2) dilution under the Lanham Act, 15 U.S.C. §

2

III.

Undisputed Facts

The facts set forth below are undisputed in the summary judgment record:

Warburton is the owner of the formula for a product known as multimin, which is a liquid solution of trace minerals injected into animals to correct mineral deficiencies.  In March 1999, pursuant to a distribution agreement between Walco and a predecessor of Warburton, Walco became the U.S. distributor of Multimin on behalf of Warburton.  While the distribution agreement was in effect, Warburton provided Walco with various confidential know how and expertise concerning multimin.  In early February of 2003, Warbuton sold Walco 3,000 liters of multimin.  The distribution agreement expired on February 28, 2003.  Walco continued to sell the multimin product it had in its possession after the expiration of the agreement.

At some time after the expiration of the distribution agreement, defendants began bottling and selling the product called Mineral Max which had the same or similar ingredients as multimin.  In late 2003 or early 2004, Warburton changed the formula for multimin and began marketing the new formula as Multimin Cattle.  On or about February 1, 2006, defendants changed their formula and began selling Mineral Max II.

---

1125(c), and (3) common law trademark infringement, for lack of standing. Accordingly, the following claims of Multimin USA remain against defendants: (1) dilution under the Lanham Act, 15 U.S.C. § 1125(a) and (2) conspiracy. All of the claims asserted in the current complaint by Warburton remain before the court.

According to plaintiffs, Mineral Max II contains essentially the same formula as Multimin Cattle except for the preservative.

IV.

Defendants' Motion

A. There is No Evidence that Defendants' Sale of Multimin Product Supplied by Warburton Violated Federal or State Trademark Law

Generally, "trademark law does not apply to the sale of genuine goods bearing a true mark, even if the sale is without the mark owner's consent." Matrix Essentials v. Emporium Drug Mart, 988 F.2d 587, 590 (5th Cir. 1993).  This genuine goods doctrine holds that "[s]tanding alone, sales of genuine trademarked products outside the confines of an authorized distribution system do not give rise to a cause of action for trademark infringement under federal or Texas law." Scott Fetzer Co. v. House of Vacuums Inc., 381 F.3d 477, 484 n.3 (5th Cir. 2004)(citing Matrix, 988 F.3d at 593; John Paul Mitchell Sys. v. Randalls Food Markets, Inc., 17 S.W.3d 721, 735-36 (Tex.App.-Austin 2000, pet. denied)).  However, "[s]ales of trademarked products without authorization may constitute trademark infringement if those products are not genuine, i.e., the product harbors some defect (or potential defect) that customers would be unable to detect." Id.

Here, defendants argue, that under the genuine goods (or first sale) doctrine, Walco's sales of the multimin product, after the distribution agreement with Warburton had expired did not violate any federal or state trademark laws.  Warburton

4

maintains that such a doctrine does not apply to the multimin
product because it was bottled by Walco and that Walco's sales of
the product outside the distribution agreement did in fact
violate both federal and state trademark laws.

While Warburton claims the genuine goods doctrine simply
does not apply to a distributor who bottles a trademarked
product, the court disagrees.  The court in <u>Matrix</u> discussed
various cases in which the genuine goods doctrine had been
applied and stated that "consumer confusion must be the linchpin"
of a court's analysis.  <u>Matrix</u>, 988 F.2d at 590.  Moreover, the
focus should be on whether the goods at issue are in fact
genuine, meaning whether such goods are defective in a way that
consumers would be unable to detect.  <u>Scott</u>, 381 F.3d at 484
n.3)(citing <u>Matrix</u>, 988 F.2d at 590-91)).  Accordingly, whether
the goods are bottled, repackaged, or altered in some other
fashion, the issue is whether such alterations result in a
product that is no longer genuine for purposes of bearing the
trademark of the original product.  <u>See</u> <u>Matrix</u>, 988 F.2d at 590-
91.

Here, Walco sold the same multimin product after the
distribution agreement expired that it had during the agreement.
Warburton does not complain that the multimin product was altered
without its permission or that Walco refused to allow Warburton
to control the quality of the manufacture of the product. Nor
does Warburton contend that there was a defect in the multimin
product that its customers would not have been able to detect.

Rather, Warburton is simply arguing that Walco bottled and sold the multimin product after the distribution agreement had expired, but it adduces no summary judgment evidence that the multimin product sold was not genuine.  Consequently, while the conduct under discussion may have breached a contract between the parties, there is no evidence that Walco's sale of the multimin product it purchased from Warburton violated any federal or state trademark laws.  Therefore, the court concludes that defendants' motion for summary judgment with respect to the post-March 2003 sale by Walco of multimin product supplied by Warburton to Walco should be granted.

B. <u>There is No Evidence of a Fiduciary Relationship</u>

Under Texas law, a "fiduciary relationship is an extraordinary one and will not be lightly created." <u>Stinnett v. Colorado Interstate Gas Co.</u>, 227 F.3d 247, 253 (5th Cir. 2000)(internal quotation marks omitted).  Indeed, "fiduciary duties do not abound in every, or even most, garden variety, arms-length contractual relationships, even those among trusting friends." <u>Id</u>. (citing <u>Crim Truck & Tractor Co. V. Naistar Int'l Transp. Corp.</u>, 823 S.W.2d 591, 594-95 (Tex. 1992)(overruled on other grounds by <u>Subaru of America, Inc. v. David McDavid Nissan, Inc.</u>, 84 S.W.3d 212, 225 (2002)).  Whether a fiduciary relationship exists, where the relevant facts are not in dispute, is a question of law for the court to decide.  <u>Nat'l Med. Enters. v. Godbey</u>, 924 S.W.2d 123, 147 (Tex. 1996).  Some formal relationships, such as a trustee-beneficiary or an attorney-

client relationship, automatically create a fiduciary duty.
Meyer v. Cathey, 167 S.W.3d 327, 330 (Tex. 2005).  The Texas
Supreme Court stated, in Meyer, that "[w]e also recognize an
informal fiduciary duty that arises from 'a moral, social,
domestic or purely personal relationship of trust and
confidence.'"  Id. at 331 (quoting Associated Indem. Corp. v. CAT
Contracting, Inc., 964 S.W.2d 276, 287 (Tex. 1998)).  For a
business transaction to give rise to an informal fiduciary duty,
"'the special relationship of trust and confidence must exist
prior to, and apart from, the agreement made the basis of the
suit.'"  Id. (quoting Associated Indem. Corp., 964 S.W.2d at 288).

    Here, Warburton maintains that it had a formal fiduciary
relationship with Walco that was created by contract,
specifically, by the parties' distribution agreement.  Walco
argues that parties' distribution agreement was insufficient to
transform their business relationship into one where a fiduciary
duty was owed.

    The court concludes that Warburton and Walco's business
relationship was not the type of "formal" relationship where a
fiduciary duty arose automatically.  Meyer, 167 S.W.3d at 330.
Such a duty arises from certain relationships because of their
special nature.  Johnson v. Brewer & Pritchard, P.C., 73 S.W.3d
193, 199 (Tex. 2002)(recognizing partnerships, trustee-
beneficiary, executor-beneficiary, and attorney-client as
relationships of a special nature that create a fiduciary duty).
Accordingly, if Walco in fact had a fiduciary duty to Warburton,

it had to have arisen by the type of informal fiduciary
relationship contemplated by the Texas Supreme Court in <u>Meyer</u>.
Consequently, for a fiduciary duty to arise from Warburton and
Walco's relationship, according to the court in <u>Meyer</u>, their
relationship of trust and confidence must have existed prior to,
and apart from, the distribution agreement.   <u>See</u> 167 S.W.3d at
331.   Warburton concedes that such a relationship did not exist
prior to the agreement.   Thus, the court concludes that there is
no evidence that parties had a fiduciary relationship, and
defendants' motion for summary judgment on Warburton's claim for
breach of fiduciary duty should be granted.[4]   However, the court
notes that the obligations assumed by Walco under the
distribution agreement appear to give Warburton basically the
same benefits it would have from a fiduciary relationship between
Warburton and Walco.   None of the rulings herein are intended to
diminish Warbuton's rights under the agreement.

C. <u>There are Genuine Issues of Material Fact as to Whether
   Defendants are Liable for Certain Claims</u>

The summary judgment evidence raises genuine issues of
material fact as to whether defendants are liable to Warburton
for trademark infringement as to products manufactured by
defendants, misappropriation of trade secrets, and breach of
contract and whether defendants are liable to plaintiffs for
trademark dilution as to products manufactured by defendants and

---

[4] Because the court has concluded that defendants' motion for summary
judgment on Warburton's claim for breach of fiduciary duty should be granted,
the motion of defendants filed April 24, 2007, to dismiss such claim will be
denied as moot.

conspiracy.  Accordingly, defendants' motion for summary judgment
on such claims must be denied.

V.

Warburton's Motion

Because the court concludes that there was no fiduciary
relationship between Walco and Warburton as a matter of law and
that there is evidence that raises genuine issues of material
facts as to whether defendants are liable to Warburton for a
breach of the distribution agreement and for misappropriation of
trade secrets, Warburton's motion for summary judgment as to
those claims must be denied.

VI.

Order

For the reasons discussed above, the court concludes that
defendants' motion for summary judgment should be granted in part
and denied in part, and Warburton's motion for partial summary
judgment should be denied.  Therefore,

The court ORDERS that Warburton's claims for breach of
fiduciary duty be, and is hereby, dismissed.

The court further ORDERS that plaintiffs' claims for
trademark infringement and dilution based on Walco's post-March
2003 sales of multimin product supplied by Warburton to Walco be,
and are hereby, dismissed.

SIGNED June 20, 2007.

JOHN McBRYDE
United States District Judge

9